UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR BROWN,                    Case No.: 19-11325
     Plaintiff,
v.                                      Stephanie Dawkins Davis
                                        United States District Judge

MICHAEL SNYDER,
     Defendant.                       Curtis Ivy, Jr.
_____/              United States Magistrate Judge


**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 49) AND TERMINATE
AS MOOT REMAINING PENDING MOTIONS (ECF Nos. 61, 63, 66)**

     Plaintiff Robert Taylor Brown filed this prisoner civil rights suit on May 6,

2019, without the assistance of counsel.  (ECF No. 1).  Plaintiff filed an unverified

amended complaint on July 28, 2020.  (ECF No. 33).  After the close of the

discovery period, Defendant Michael Snyder moved for summary judgment.  (ECF

No. 49).

     This matter was referred to the undersigned for all pretrial proceedings.

(ECF No. 36).  It is now ready for report and recommendation.

     For the reasons explained below, the undersigned recommends Defendant's

motion for summary judgment be granted and Plaintiff's motions be terminated as

moot.

## I.   INTRODUCTION

### A.   Background on Briefing

Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments. Defendant moved for summary judgment of all the claims.  Plaintiff was ordered to respond to the motion by November 12, 2021.  (ECF No. 50).  On October 18, 2021, Plaintiff filed a "Motion to Strike Objecting Defendants Defense" and a demand for a jury trial.  (ECF No. 52, 53).  Defendant Snyder responded to the motion to strike arguing that there is no basis to strike his dispositive motion. (ECF No. 56).  The Court denied Plaintiff's motion.  (ECF No. 58).  The Court explained that "[t]he more appropriate way to counter a motion for summary judgment is to file a response brief, as this Court has already Ordered Plaintiff to do, and marshal evidence establishing a genuine dispute of material fact." (*Id.* at PageID.376).  The response brief deadline was extended to December 17, 2021.

On December 9, 2021, Plaintiff filed a "Motion for Right to Jury Trial." (ECF No. 61).  Therein, he stated the "ongoing lies being used as Defenses by the Defendant and Counsel need to be brought before a Jury." (*Id.* at PageID.384).  He asserted that Defendant was trying to "capitalize" on his lack of materials for law resources and that previous filings and exhibits were unavailable.  (*Id.* at PageID.386).  He wrote that he was serving a parole violation; his legal materials were at home.  He then provided an index of authorities, a brief recitation of facts,

and argument in opposition to Defendant's motion for summary judgment.  (*Id.* at PageID.390-94).  There was no evidence attached to the motion.  In response to this motion, Defendant requested that the Court consider this motion to be Plaintiff's response to his summary judgment motion, since Plaintiff had yet to file a proper response brief.  (ECF No. 62).  He then responded to the motion as if it was a response brief.

On February 17, 2022, more than four months after the deadline to do so, Plaintiff filed his own motion for summary judgment.  Like the motion for a jury trial, there is a statement of facts and argument in support of his claims.  (ECF No. 63).  Unlike the motion for a jury trial, he did not state that he lacked access to his materials.  The undersigned, therefore, assumes such difficulties were not present when he drafted his motion for summary judgment.  There was no evidence attached to the motion.  Defendant responded to this motion.  (ECF No. 65).  He argued the motion should be denied as it was filed late and that it should be denied because it is unsupported by evidence from which the Court could grant summary judgment in Plaintiff's favor.  Defendant also substantively responded to the arguments.  (ECF No. 65).

On March 17, 2022, Plaintiff moved this Court to grant summary judgment in his favor.  He contends his February 2022 motion for summary judgment should

be granted because Defendant did not timely respond to it.  (ECF No. 66).  The Court notes that Defendant's response brief was timely filed.

In short, Plaintiff has not filed a proper response brief.  To give him the benefit of the doubt, the undersigned will address the "Motion for Right to Jury Trial" and Plaintiff's motion for summary judgment both as responses to Defendant's motion for summary judgment, and the undersigned will address Plaintiff's motion for summary judgment as such.

As noted, none of Plaintiff's filing contain any evidence, such as an affidavit executed by someone.[1]  Because of this, the evidence presented by Defendant is uncontested.

B.   Uncontested Facts[2]

The alleged events took place at the G. Robert Cotton Correctional Facility ("JCF"), where Plaintiff was incarcerated and Defendant worked as a corrections officer.  Plaintiff's three claims are related.

---

[1] Plaintiff's amended complaint is unverified and thus cannot be used by the Court as evidence.  *See Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir.  2001) ("[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (stating that allegations in a properly *verified* complaint can be considered at this stage).  Attached to that complaint are grievances, a property claim letter, and a Class I Misconduct Report.  (ECF No. 33).  The undersigned will consider those documents that are not also attached to Defendant's brief.

[2] The undersigned will rely on some of the allegations in the amended complaint for factual background.  Citations to the allegations, rather than documents attached to the complaint and Defendant's motion for summary judgment, should not be construed as acceptance of the allegation as fact.

The first claim relates to the confiscation of some of Plaintiff's property. Plaintiff alleges that on January 6, 2019, Defendant deprived him of personal property.  (ECF No. 33, PageID.142-43).  Defendant affirmed that he confiscated food from Plaintiff and placed it in a contraband locker on that same date.  He explains he did so because Plaintiff came in from the "yard" with the food, which was "a violation."  (ECF No. 49-2, PageID.296, at ¶ 4).  Plaintiff submitted a grievance about the deprivation on February 6, 2019.  He stated that Defendant took several items without a hearing.  He asserted this was a due process violation. (ECF No. 33, PageID.151).  The investigation into the Step I grievance revealed that when Defendant returned to the contraband locker to retrieve the items, they were gone.  The grievance respondent suggested Plaintiff should proceed with a claim against the State of Michigan for retrieval of the property, which Plaintiff valued at about $30.  (*Id.* at PageID.152).

Plaintiff pursued his property claim with the State Administrative Board ("SAB").  On April 16, 2019, the SAB issued a letter to JCF and Plaintiff informing them that $30.80 should be credited to Plaintiff's account for the lost property.  (*Id.* at PageID.154).

The next claim is about a Class I Misconduct ticket that Plaintiff alleges was retaliatory.  On April 2, 2019, Defendant found a weapon within Plaintiff's area of control in the housing unit shortly after a facility-wide shakedown.  In his affidavit,

Defendant states he searched Plaintiff's property based on a tip from another inmate assigned to Plaintiff's housing cube and located the weapon.  (ECF No. 49-2, PageID.296, at ¶¶ 7-8).  Despite Plaintiff's allegations otherwise, Defendant asserted he "did not 'plant' this weapon in inmate Brown's property. . . .  I had nothing to do with this weapon prior to locating it in Brown's property."[3]  (*Id.* at ¶ 9).  Defendant issued a Class I Misconduct for "Possession of a Weapon."  (*Id.* at ¶ 10).

In his amended complaint, Plaintiff alleges Defendant planted the weapon and issued the Class I Misconduct as retaliation for his February 2019 grievance and SAB claim about the confiscated food.  (ECF No. 33, PageID.145, at ¶ 8).  Defendant swears he was unaware of Plaintiff's property confiscation grievance and SAB claim, and only learned of such after he was served with the complaint.  (ECF No. 49-2, PageID.296, at ¶¶ 5-6).  He also stated he "did not retaliate against inmate Brown at any time."  (*Id.* at PageID.297, ¶ 11).

Plaintiff attended a hearing on the Class I Misconduct ticket before Administrative Law Judge ("ALJ") Clifton Schneider.  According to the Hearing Report, Plaintiff pleaded not guilty to the charge; he denied the weapon was his.

---

[3] While not evidence that can be considered, Plaintiff argued in his Motion for Right to Jury Trial that the circumstances related to the discovery of the weapon are suspicious.  The entire prison had been searched in a facility-wide shakedown only 30 minutes before Defendant searched Plaintiff's cell.  Plaintiff questions why he searched the cell so soon after it had been searched, if not for retaliation.  (ECF No. 61, PageID.391).

He stated his locker had just been searched by the "ERT team" and he had just

been stripped searched, so it was not his.  He asserted Defendant was retaliating

against him for the SAB claim because he thought Defendant would have to pay

for the $30 reimbursement.[4]  The ALJ read to Plaintiff Lt. Blunt's memorandum,

which was attached to Plaintiff's amended complaint.  In short, the memorandum

detailed prisoner movements, including other prisoners who entered Plaintiff's

cube after the facility-wide search and before Defendant entered the cube.

According to the ALJ, after this, Plaintiff suspected his "cubies" more than

Defendant "now that he knew they were in the cube after him."  (ECF No. 49-3,

PageID.301-02).

The ALJ rejected Plaintiff's retaliation claim against Defendant.  Plaintiff

offered no evidence that Defendant was aware of the grievance.  Further, if the

SAB grants a prisoner's request, the money comes from the state, not the

defendant.  The ALJ specifically stated that "Snyder will not be informed of" the

SAB's decision.  Since Plaintiff's retaliation claim was based on the "faulty

assumption" that Defendant would have to pay, and no other evidence of causation

had been presented, the ALJ found that Defendant "did not take any action because

---

[4] ALJ Schneider provided a declaration in which he states it is his duty and "routine practice to ensure that my decisions accurately reflect any statements that are made by the prisoner at the hearing.  As such, any statements attributed to [Plaintiff] in the Hearing Report accurately reflect statements made by [him] in my presence during the hearing in question." (ECF No. 49-3, PageID.300, at ¶ 7).

of the prisoner's grievance."  He therefore rejected the retaliation claim.  (*Id.* at

PageID.302).

The ALJ found Plaintiff not guilty.  He reviewed the memorandum from Lt.

Blunt, including a video summary of Plaintiff and his housing unit pertaining to the

date and time in question, which the ALJ described as follows.  Plaintiff was strip

searched and placed in the study with other inmates.  After the strip search, he

should not have had any contraband on him.  He remained in the study until

02:08:54.  He re-entered his cube for 39 seconds and left with his coat.  For the

next four minutes, "numerous" other prisoners went in and out of the cube.

Defendant then searched the cube without Plaintiff having returned.  The ALJ

found that "[i]n light of the very limited time the prisoner was back in the cube and

that the prisoner and his locker had just been searched thoroughly, it's unlikely that

the prisoner retrieved and stashed the plastic item in his locker in the 39 seconds he

was back in the cube."  (*Id.*); (*see also* ECF No. 33, PageID.160-60, Lt. Blunt's

Memorandum).  The ALJ instead found it more likely that one of the "numerous"

prisoners who had walked in and out of the area after Plaintiff placed the item in

Plaintiff's locker during the facility-wide shakedown.

The last claim is related to Plaintiff's placement in segregation while

awaiting the misconduct hearing.  He alleged he was placed in segregation on

April 2, 2019 and "removed from college, lost my Pell Grant $6,095 to continue

college for that year.  I was removed as a Unit Porter, and lost wages, and transferred out the facility, to Central Michigan Corr. Facility (June 2019)."  (ECF No. 33, PageID.144-45, at ¶ 7).  Michigan Department of Corrections Policy Directive 03.03.105(Q) states, "the reviewing officer shall order a prisoner charged with a non-bondable misconduct to be confined in temporary segregation . . . pending the hearing."  (ECF No. 49-8, PageID.327).  Class I Misconducts are non-bondable misconducts.  (*Id.* at PageID.325, at ¶ (D), Appendix A).

## II.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from

the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.

Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, .

. . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S.

506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of

Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)).  The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a *pro se* litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

B.    Discussion

The undersigned will address the arguments raised in Defendant's motion

for summary judgment first.  The evidence comes from attachments to Plaintiff's

amended complaint and Defendant's motion.  Plaintiff did not come forward, either in response to Defendant's motion or in support of his own, with any evidence.

### 1. Fourteenth Amendment Due Process

Plaintiff claims his Due Process rights were violated on January 6, 2019, when Defendant confiscated personal property.  Defendant argues the claim fails because Plaintiff had adequate State post-deprivation remedies available to him, and of which he availed himself and was compensated in full.  (ECF No. 49, PageID.273-77).  Plaintiff argues the confiscation was without proper "notice of intent" and that prior to the SAB award, the Fourteenth Amendment had been violated while he was without his property and because he was not given a hearing. (ECF No. 63, PageID.409-10).

Deprivations of property are actionable under 42 U.S.C. § 1983 if they are carried out without due process.  "Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Under the *Parratt* doctrine, however, "[i]f an official's conduct would otherwise deprive an individual of procedural due process but is 'random and unauthorized,' the *Parratt* doctrine allows the state to avoid liability by providing adequate remedies after the deprivation occurs."

*Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 508 (6th Cir. 2020) (citation omitted).  A procedural due process claim will be dismissed if there is an adequate post-deprivation State remedy and "(1) the deprivation was unpredictable or random; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty."  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014) (citation and intern quotation marks omitted).

Defendant argues the deprivation was unpredictable, predeprivation process was impossible, and, based on Plaintiff's allegations, he was not authorized to confiscate the items—Plaintiff alleged Defendant took the items "without just cause or reason."[5]  (ECF No. 33, PageID.142).  These facts satisfy the *Parrott* doctrine.[6]

Finally, it is well-established that adequate post-deprivation process exists for prisoners in Michigan.  The Sixth Circuit in *Copeland v. Machuliz* summarized

---

[5] Neither party challenges Defendant's acceptance of Plaintiff's amended complaint allegation.  As discussed above, complaint allegations are not admissible facts.  That said, since Defendant relies on the allegation that the taking was unauthorized, and Plaintiff does not challenge the reliance, the undersigned will accept the allegation.

[6] Were the Court to reject Plaintiff's allegation that the taking was unauthorized given Defendant's averment that he took the property because it was "a violation," there is a body of case law holding that "when the 'necessity of quick action' renders pre-deprivation process 'impossible or impracticable'—pre-deprivation process may be excused even when an action is neither random nor unauthorized."  *Johnson*, 980 F.3d at 508 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1402-05 (6th Cir. 1994)).  Defendant did not argue there was "necessity of quick action," although in the prison setting, it would seem that a corrections officer would need to act quickly to confiscate property believed to be in violation of prison rules.

the post-deprivation remedies available to state prisoners in Michigan, including an action to recover possession of goods or chattels and a procedure by which an individual may be compensated for alleged unjustifiable acts of state officials.  57 F.3d 476, 480 (6th Cir. 1995).  The court determined that "the appeal of administrative decisions to the state circuit court provides an adequate remedy for violations of due process for purposes of *Parratt v. Taylor.*"  *Id.* (citations omitted)*; see also Teague v. Bieganksi*, 2021 WL 5741292, at *2 (E.D. Mich. Dec. 2, 2021) (discussion state post-deprivation remedies available to Michigan plaintiffs).  Plaintiff availed himself of Michigan's post-deprivation remedies by filing a claim with the SAB.  He was fully compensated for the loss of property.  Because adequate state remedies were available to Plaintiff, no unconstitutional deprivation of property without due process resulted.  This claim should be dismissed.

### 2.    First Amendment Retaliation

To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"Under the third element, 'the subjective motivation of the defendants is at issue.'"
*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175
F.3d at 399). The burden then shifts to the defendant, and "'[i]f the defendant can
show that he would have taken the same action in the absence of the protected
activity, he is entitled to prevail on summary judgment.'" *Id.* at 267 (quoting
*Thaddeus-X*, 175 F.3d at 399).

Plaintiff claims Defendant planted a weapon in his locker in retaliation for
Plaintiff's property loss grievance and property claim with the SAB. Defendant
argues the retaliation claims fail because (1) Plaintiff cannot show he was aware of
the grievance or SAB claim, (2) Plaintiff cannot show he was involved in
"planting" a weapon, and (3) because the ALJ who presided over the hearing
rejected Plaintiff's retaliation claim, and thus Plaintiff is precluded from raising the
defense now. (ECF No. 49, PageID.277). The undersigned will address the third
argument—that Plaintiff is precluded from raising retaliation—first.

To determine whether we must give preclusive effect to "factfinding from
Michigan prison hearings," we look to four requirements, all of which must be
met: (1) the state agency "act[ed] in a 'judicial capacity' "; (2) the hearing officer
"resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had
an adequate opportunity to litigate the factual dispute"; and, (4) if these other three
requirements are met, we must "give the agency's finding of fact the same

preclusive effect it would be given in state courts." *Maben*, 887 F.3d at 250 (quoting *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013) (internal citation and quotation marks omitted)).  Not every factual finding by a prison administrator is entitled to preclusive effect.  Courts should consider the surrounding circumstances, such as whether the issues were actually litigated and decided, and the fairness and accuracy of the factual findings made by the hearing officer.  *Id.*

Here, there is no question the ALJ acted in a "judicial capacity" in taking evidence and testimony and rendering a decision on the Class I major misconduct ticket.  *See Roberson v. Torres*, 770 F.3d 398, 403 (6th Cir. 2014) (Major misconduct hearings meet this requirement "since the hearing officer considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court.").  The second factor is satisfied because the ALJ resolved disputed issues of fact—whether Plaintiff was guilty of possessing the weapon and whether Defendant planted the weapon in retaliation for the property issue.  The ALJ rejected the retaliation claim as speculative and found Plaintiff not guilty of possessing the weapon because of the likelihood that another prisoner placed the weapon in Plaintiff's area of control.

The Sixth Circuit has held the major misconduct hearing process in Michigan prisons satisfies the third factor. The protections available to these prisoners include an "evidentiary hearing without undue delay," being given "reasonable notice" of the hearing, receiving "an opportunity to present evidence" and to present "oral and written arguments on issues of fact," and being allowed to submit "rebuttal evidence" to the evidence against him. *Peterson*, 714 F.3d at 912 (citing Mich. Comp. Laws § 791.252(a), (b), (d), (e)). Additionally, admitted evidence must be made part of the record, § 791.252(h), the presiding hearing officer must be an attorney, must be impartial and recuse himself if bias is successfully shown, and must make an official record of the hearing at which he presides. *Id.* at 912-13 (citing M.C.L. §§ 791.251(6); 791.252(f), (i), (j); 791.253).

The fourth factor requires the Court to look to Michigan law.

> The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages and tracks several of the *Elliott* factors. The first stage applies to all cases where preclusion is claimed, and asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. The next stage applies only to parties seeking to preclude litigation on a factual issue that was decided by an administrative agency. It asks whether: (1) the administrative decision was adjudicatory in nature; (2) there was a right to appeal from the decision; and (3) the legislature intended to make the decision final absent an appeal.

*Id.* at 914 (citations omitted).

Some of these factors have already been addressed—the agency determination was adjudicatory, Plaintiff had the right to appeal it to State court, and there is mutuality of estoppel (although he did not appear at the hearing, Plaintiff put Defendant's actions at issue and his actions were factually determined at the hearing).

As discussed above, the fact issues were essential to the judgment, which was that Defendant did not plant the weapon to retaliate and that Plaintiff was not guilty. For the questions to have been "actually litigated," they must have been put into issue by the complaint, submitted to the trier of fact, and determined by the trier. *Keywell & Rosenfeld v. Bithell,* 657 N.W.2d 759, 783 n. 49 (Mich. Ct. App. 2002) (per curiam) (citing *VanDeventer v. Mich. Nat'l Bank,* 432 N.W.2d 338, 341 (Mich. Ct. App. 1988) (per curiam)). And Planitiff must have received a full and fair opportunity to litigate his allegations.

Here, Plaintiff argued he was not guilty of the charge because the weapon was not his. Instead, it was planted by Defendant. The ALJ took Plaintiff's testimony and reviewed the evidence submitted by Lt. Blunt detailing the timeline of Plaintiff's movements, other prisoners' movements, and Defendant's movements. From that evidence, he found Plaintiff's retaliation claim speculative and based only on the faulty assumption that Defendant would personally be

responsible for Plaintiff's $30 of missing property. The ALJ further concluded it was likely that another prisoner planted the weapon, a theory Plaintiff ultimately supported by the end of the hearing. Thus, the issues were "actually litigated" and Plaintiff received a "full and fair opportunity to litigate." *See Peterson*, 714 F.3d at 915-17) (discussing a few of the thirteen factors used to evaluate this factor, and stated that "the answer 'rest[s] on the . . . courts' sense of justice and equity.'" (quoting *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845 n. 2 (Mich. Ct. App. 2004)).

Ultimately, it is clear Plaintiff had incentive to fully litigate his retaliation charge. If he succeeded, the charge against him would be dropped. If he failed, he would (perhaps under other circumstances) be found guilty of a major misconduct. And he did litigate his claim, although unsuccessfully. For these reasons, the ALJ's decision should be given preclusive effect and dispose of Plaintiff's retaliation claim.

Even were the Court to consider the retaliation claim, and assuming Plaintiff engaged in protected conduct (filing the property grievance and SAB claim) and that having a weapon planted among his property is adverse action, the claim fails on the causation element. Defendant argues that Plaintiff cannot establish causation because he "must have known about the protected activity in order for it to have motivated the adverse action." (*Id.* at PageID.278-79) (quoting *Hamilton*

*v. Starcom Mediavest, Inc*., 522 F.3d 623, 628 (6th Cir. 2008)).  In his affidavit,

Defendant states he did not know about the grievance or the SAB claim until this

lawsuit was filed, which occurred well after the weapon was found in Plaintiff's

property.  Having established he did not know about the protected conduct, no

reasonable jury could conclude he planted a weapon in retaliation for that conduct.

Of course, the evidence also establishes that he did not plant the weapon.

Described above is the ALJ's factual findings about the weapon.  He explained that

the video evidence showed "numerous" other prisoners entering Plaintiff's cube

after the facility shakedown and before Defendant entered the cube.  Because

Plaintiff's retaliation charge against Defendant was speculative and based on the

faulty assumption that Defendant would be personally responsible for Plaintiff's

lost property, the ALJ rejected the retaliation claim and found it more likely one of

the other prisoners placed the weapon in Plaintiff's area.  For this reason as well,

the retaliation claim fails.

Plaintiff also alleges he was transferred to another facility in connection with

the lost property and Misconduct ticket.  The claim should be dismissed.  First, he

did not allege or bring forth facts that Defendant initiated or caused the transfer.

Defendant, however, swears in his affidavit that he was not involved with

Plaintiff's transfer, that transfers are outside the bounds of a corrections officer's

authority.  (ECF No. 49-2, PageID.297, at ¶ 12).

Second, as the Sixth Circuit has observed, "since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (citing *Smith v. Yarrow,* 78 Fed. Appx. 529, 543–44 (6th Cir. 2003)).

On the other hand, where there are aggravating factors, courts have been willing to find that a prison transfer would deter a person of ordinary firmness. *Id.* at 704. For example, in *Siggers-El*, the aggravating factors accompanying the transfer included the loss of a high paying job needed to pay for the plaintiff's attorney (representing him in a direct appeal of his criminal conviction), and increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved farther away from her. *Id*. This limited exception applies "where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts." *Hix v. Tenn. Dept. of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). If a prisoner alleges no such foreseeable consequences, however, the claim of retaliatory transfer must fail. *Id*.

There is no allegation or evidence in the record of "aggravating factors" that would call into the question the propriety of the transfer. The transfer order reflects that Plaintiff was transferred from a Level I security prison to another

Level I security prison.  Thus, there was no change in his security classification.

(ECF No. 49-6, PageID.314).  Without more, the allegation is only that he was

transferred in retaliation, which cannot by itself carry the claim.  The claim should

be dismissed.

### 3.    Eighth Amendment Deliberate Indifference

This claim is grounded in Plaintiff's confinement in segregation after he was

issued the Class I Misconduct (April 2, 2019) until the hearing on the ticket (April

10, 2019).  He alleges that because of his placement in segregation he lost his

prison job and Pell grant money to continue college courses that year.  In his

Motion for Summary Judgment, Plaintiff stated he was in segregation with no yard

time, violating the law that requires that inmates be given one-hour per day of yard

time.  (ECF No. 63, PageID.411).  Again, no evidence was attached to this motion

establishing the fact that he was not given yard time.

To establish an Eighth Amendment violation, the prisoner must allege that

he was deprived of the minimal necessities of civilized life and that prison officials

were deliberately indifferent to his needs.  *Powell v. Washington*, 720 F. App'x

222, 227-28 (6th Cir. 2017) (citation omitted).  "A prison official's 'deliberate

indifference' to a substantial risk of serious harm to an inmate violates the Eighth

Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  To establish

deliberate indifference, an inmate must satisfy an objective and subjective prong.

*Id.* at 834.  The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm."  *Id*.  And the subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety."  *Id*. at 837.

Plaintiff's placement in segregation, without more, does not amount to an Eighth Amendment violation.  *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." (internal quotation marks omitted)).  He did not allege or bring forth facts establishing that he was incarcerated under conditions posing a substantial risk of harm or that Defendant deliberately disregarded an excessive risk of harm by issuing a misconduct ticket that would result in Plaintiff's placement in segregation.  Rather, the facts establish his placement in segregation was part of the normal course.  Defendant submitted Policy Directive 03.03.105 which, at paragraph Q, requires a prisoner charged with a Class I misconduct, like Plaintiff, be placed in temporary segregation.  (ECF No. 49-8, PageID.327).  Thus, Plaintiff's Eighth Amendment claim fails.

      4.    Qualified Immunity

Defendant argues he is entitled to qualified immunity because Plaintiff has not demonstrated he violated any clearly established rights. (ECF No. 49, PageID.289-91). The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendant bears the burden of pleading qualified immunity, but Plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the right was

clearly established." *Id*.  If both questions are resolved in the affirmative, then the

doctrine of qualified immunity would not apply and the case could proceed.  Yet if

the answer to either question is no, then qualified immunity obtains.  The court

may consider the questions in whichever order the court determines makes the

most sense.  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  "When a defendant

invokes qualified immunity in a motion for summary judgment, the plaintiff must

offer sufficient evidence to create a genuine dispute of fact that the defendant

violated a clearly established right."  *Folks v. Petit*, 676 F. App'x 567, 569 (6th

Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir.

2015)).

As addressed above, Plaintiff has not established that there is a genuine issue

of material fact as to his claims that Defendant violated his Constitutional rights.

Thus, the claims fail to satisfy the first inquiry under qualified immunity analysis

and Defendant is entitled to qualified immunity.

> 5.   Plaintiff's Motion for Summary Judgment (ECF No. 63)

The undersigned suggests that this motion be denied as moot considering the

recommendation to grant Defendant's motion as a whole and dismiss all claims in

this case.

Alternatively, the undersigned further suggests the motion be denied for

Plaintiff's failure to support the motion with evidence.  As explained above, "[t]he

moving party has the initial burden of proving that no genuine issue of material fact exists," *Stansberry*, 651 F.3d at 486, and he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56. Plaintiff did not meet his burden because he did not attach or point to any evidence in support of his motion. He relies only on his own recitation of the facts and his arguments—neither of which a jury can rely on. This does nothing to meet his burden of proving no issues of material fact exist and that he is entitled to judgment as a matter of law. Nor did Plaintiff seek leave to file his motion approximately four months after the dispositive motion deadline passed. Plaintiff's remaining motions should also be denied as moot.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 49) be **GRANTED** and that the case be **DISMISSED**. The undersigned further **RECOMMENDS** that Plaintiff's Motion for Right to Jury Trial (ECF No. 61), Motion for Summary Judgment (ECF No. 63), and Motion for to Grant Summary Judgment (ECF No. 66) be **TERMINATED AS MOOT**. Alternatively, the undersigned recommends Plaintiff's Motion for Summary Judgment (ECF No. 63) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 16, 2022                              s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on May 16, 2022.

s/Kristen MacKay
Case Manager
(810) 341-7850
